## PHILANDER GORDON *vs.* TIMOTHY E. PARMELEE & others.
## GEORGE A GORDON *vs.* SAME.

In an action upon a promissory note given for the purchase of real estate, the defendant introduced evidence tending to show that he was induced to make the purchase by misstatements of the plaintiff as to the boundaries, extent and quality of the land, and the amount of wood growing thereon; and the jury were instructed that if the plaintiff pointed out land, claiming to own it, when he did not, or falsely and knowingly misstated the number of acres or fraudulently stated the number of acres to be many more than they really were, when he did not know how much land there was, or falsely and knowingly misrepresented the amount of wood, or the quantity of land and its capacity to produce grain, and the number of cattle it would keep through the year, and the defendant, relying upon these false representations, bought the land, the jury might deduct from the amount of the note sued on any damages sustained by the defendant by reason of the false and fraudulent representations of the plaintiff. *Held,* that the defendant had no ground of exception.

In an action upon a promissory note given for the purchase of land, which the defendant alleges that he was induced to make by false and fraudulent representations as to the quantity and quality of the land, the defendant is not bound to prove such misrepresentations beyond a reasonable doubt, but only by a preponderance of evidence, as in other civil cases.

No action can be brought on the last day of grace on a promissory note payable at a certain time, without a previous special demand at a reasonable time and place; unless such demand is waived by the maker, in which case an action may be brought as if demand had been made. And evidence that the maker told the holder three days before that he should not pay the note, and he might sue as soon as he pleased, is sufficient evidence of such a waiver to be submitted to the jury.

ACTIONS OF CONTRACT by the payees of promissory notes, made by Parmelee as principal and the other defendants as sureties. Writs dated April 4, 1855. The declaration in the first case was for the principal of a note for $350, payable " on the first day of April 1855 and interest annually," and for one year's interest on another note payable " on the first of April 1856 and interest annually." The declaration in the second case was for the principal of a note for $300, payable " on the first of April 1855 and interest annually," and for one year's interest on another note, dated March 8, 1853, and payable " on the first day of April 1856, and interest annually."

Answers, that the notes were given in payment for a farm and wood-land sold by the plaintiffs to Parmelee, and that Parmelee was induced to make the purchase by false and fraudulent

representations of the plaintiffs as to the quantity and quality of the land.

At the trial in the court of common pleas in Berkshire at October term 1856, the defendants introduced evidence tending to show that Parmelee was induced to purchase the real estate by the statements of the plaintiff that the wood-land contained fifty acres, when in fact it contained but about thirty nine acres, and his misstatements of the amount of wood growing thereon, and as to the boundaries thereof, by showing boundaries which embraced lands of others, and by his statement that the farm contained one hundred acres certainly, and upon admeasurement would be found to contain one hundred and twenty five acres, and that its capacity for production and keeping of stock was much greater than it actually was. The defendants contended, as matter of law, that if the plaintiffs made these statements, knowing them to be false, or made them as of their own knowledge, not knowing whether they were true or false, and they proved to be false, and Parmelee was induced by the statements to purchase the premises, and was injured, recoupment for the damages might be made in this action.

*Briggs,* J. instructed the jury as follows : " If the plaintiff pointed out to the defendant woodland, claiming to own it, when he knew he did not own it, or falsely and knowingly misstated the number of acres of woodland, or the number of acres in the home farm, or if he fraudulently stated the number of acres of land to be many more than there were, when he did not know how much land there was, or if he falsely and knowingly misrepresented the amount of wood standing on the woodland, or falsely and knowingly misrepresented the quantity of land in the home farm, and its capacity to produce grain, and the number of cattle it would keep through the year, and the defendant, relying upon these false representations, entered into the contract with the plaintiff for the land, and took a deed of the same, the jury may deduct from the amount of the notes declared on in these suits, which were given as part of the consideration of the land, any damages which he may have sustained, by reason of the false and fraudulent representations of the plaintiff."

The judge also instructed the jury, that the burden of proving these misrepresentations was upon the defendants, and added: "In civil cases, the party having the burden of proof must sustain his case by a balance of testimony, or by such preponderating evidence as would reasonably satisfy the jury of the truth of his allegation. The supreme court of this Commonwealth had recently, in a case before them, substantially laid down this general rule. In the same case they had also said there were some civil actions, in which, from the nature of the case, and of the facts to be proved, it would seem that the same strictness and amount of evidence should be required as in criminal cases depending upon the same facts. It appeared to him this was one of those cases. Here the defendants alleged that the plaintiffs had made false representations, knowing them to be false, for the purpose of deceiving and defrauding one of them, which if true would amount to a criminal offence in the plaintiffs, and the same amount of evidence should be required to sustain the charge as would be required if the plaintiffs were on trial under an indictment charging the same offence, that is, for having deceived and cheated the defendant Parmelee, by these same false and fraudulent representations. If the charge made was thus proved to the satisfaction of the jury, they should so declare it by their verdict; but if their minds, after carefully investigating the facts, were left in reasonable doubt, the charge was not made out, and their verdict should be otherwise."

The jury returned verdicts for the plaintiffs, and the defendants alleged exceptions, which were argued and decided at September term 1857.

*I. Sumner*, for the defendants.

*C. N. Emerson*, for the plaintiffs.

DEWEY, J. The instructions of the court of common pleas, applying the rule of the criminal law that "the jury must be satisfied beyond any reasonable doubt," before they would be authorized to find a verdict of guilty, to the case of a plaintiff in a civil action brought to recover the contents of a promissory note, were, we think, erroneous. It is true that the

defence offered was based upon a charge of fraudulent represen-
tations, and such representations as might perhaps have been the
subject of a criminal prosecution. But the plaintiff was not on
trial for any criminal charge. No conviction or punishment there-
for could result from a verdict against the plaintiff in the present
case. It was merely the question whether certain notes could be
collected, or whether there was a taint of fraud in the transaction,
that would affect the notes, and authorize a deduction from the
nominal amount on that account. The presiding judge on the
trial of this case stated very correctly the rule that a distinc-
tion exists between the amount of proof required in civil and
in criminal cases, and that in civil cases the party having the
burden of proof must sustain his case by such preponderance
of evidence as would reasonably satisfy the jury of the truth
of his allegation.

The error of the instructions was in assuming that this court
had sanctioned the exceptions to the rule that seem to be stated
in 2 Greenl. Ev. § 426, and that this case was properly embraced
in the class of cases there referred to. It was not our purpose, in
stating the opinion of this court in *Schmidt* v. *New York Union
Mutual Fire Ins. Co.* 1 Gray, 529, to sanction those exceptions
at all, or to say that in any civil action the jury were not to
decide by the preponderance of the proof or the weight of
evidence. It was said that "if there be any class of civil cases,
in which the instruction usually given in criminal cases might
be required, it would be those where the defendant has in a special
plea in justification directly charged upon the plaintiff a crime,"
&c., and the case of an action of tort for slander was referred
to as a case to which Mr. Greenleaf would apply the distinc-
tion. But it was further stated in the same opinion, that how-
ever it might be in such a case, "the principle does not apply
to an action of assumpsit, or contract, as it is termed in the
new practice act."

The present cases are actions of contract, and therefore
directly fall within the rule just stated, that they are to be
decided upon a preponderance of evidence, sufficient reasona-
bly to satisfy the minds of the jury. We are not disposed to

extend the rule of the criminal law requiring that, "in order to a criminal conviction, the jury must be satisfied of the party's guilt beyond a reasonable doubt," to a case like the present, nor indeed to any civil case. In the opinion of the court, it is better that the rule be uniform in all civil cases, leaving the instruction "that the jury must be satisfied of the guilt of the party beyond a reasonable doubt" to apply solely to criminal cases.

As to the rulings of the court of common pleas upon the other questions raised we think they were sufficiently favorable to the defendant, and furnish no ground for exceptions.

*Exceptions sustained.*

A second trial was had in the court of common pleas' at October term 1858, before *Bishop*, J., to whose rulings the defendants alleged exceptions, which were argued at September term 1859 by *Sumner & H. L. Dawes*, for the defendants, and by *J. E. Field* for the plaintiffs, and are stated in the opinion.

SHAW, C. J. One fact stated in these cases was not much relied on, and yet it may be proper briefly to notice it. Each action is brought to recover the amount due on one promissory note, and the interest on another. In regard to the latter, a note not yet due, the plaintiff was asked, in cross-examination, whether the note had not been sold to a third person, and he answered that it had. The term "sold" is equivocal. If these notes had been indorsed and delivered over to third parties, and the indorsements filled up, it might have been a good ground of defence. But if the plaintiffs, as holders of the notes, had merely agreed to indorse them at some future time, or assigned them, without indorsements, as choses in action, then the legal title still remained in the promisees, the production of the notes by the plaintiffs, payable to themselves, constituted apparently a good legal title, and the actions could be maintained in the names of the promisees, though other parties had acquired a beneficial interest in the proceeds when recovered. The fact that actions have been brought on these by other parties cannot

affect this case; whether such actions can be maintained we have no occasion to consider.

The only point argued in this case is, whether the actions were prematurely brought. The notes, the principal of which was sued for, were in terms due April 1st 1855, and, by the statute allowing days of grace on all promissory notes payable on time, the 4th of April was the last day of grace. Rev. Sts. *c.* 33, § 5. Without any demand made on either of the notes by the respective holders, actions were brought on them against the makers, and attachments thereon were made on the same day.

The court are of opinion that these actions were brought too soon, and that they cannot be maintained. By the general rule of the common law, on an obligation to pay money on a day certain, as debt for rent, debt due on bond or specialty, or otherwise, the party bound has the whole of the last day in which to pay it, and his obligation is not broken so as to subject him to an action for a breach till the whole day has expired. To this rule negotiable securities, as bills of exchange and promissory notes, payable with grace, are an exception. Whether they are entitled to grace by usage, by the terms of the instrument, or by statute, in this respect makes no difference. *Leftley* v. *Mills,* 4 T. R. 174. *Whitwell* v. *Brigham,* 19 Pick. 122.

The question then is as to the nature, extent and limits of such exception. We think that exception is, that notes and bills entitled to grace are payable on demand at any reasonable time and place on the last day of grace, and, if not paid on such demand, the note is dishonored, the contract is broken, and an action may be forthwith brought against the promisor or acceptor, and on due notice given, or due diligence used to give notice, action may be brought against the indorser.

This point has been so largely discussed, and the authorities, especially those of Massachusetts, have been so fully reviewed, in the case of *Staples* v. *Franklin Bank,* 1 Met. 43, that it seems unnecessary to do more than refer to that case. The only possible room to raise a doubt is, whether if a note be payable on demand, the action may not be commenced against the principal debtor, without a special demand, on the

ground that the *sæpe requisitus*, as stated in the writ, would be sufficient. But we are satisfied that all the authorities, in which the case of money due on demand on the last day on negotiable paper is held to be an exception, are discussed and decided on the ground of an actual demand made on the last day. Most of the cases are those where the question turns upon the liability of an indorser, in which case it is uniformly held that the note is dishonored by nonpayment on the last day of grace, on a special demand made on the promisor. In one of the Massachusetts cases, *Church* v. *Clark*, 21 Pick. 310, the suit was against the maker of the note, and commenced by an attachment at one minute after twelve o'clock on the morning of the last day of grace, and held not to lie. But the decision was placed on the fact that the note on its face was payable " at bank," and this was held to amount to an implication that it was payable on a demand made within bank hours, so that it was not a decision precisely in point. But the case in Maine of *Greeley* v. *Thurston*, 4 Greenl. 479, depending mainly on the Massachusetts authorities, is precisely like that before us. It was the ordinary case of an action against a promisor, commenced in the afternoon of the last day of grace. We think this is the true result of the authorities, establishing the exception to the general rule, in regard to the obligation of the promisor or acceptor of a negotiable security payable with grace; and the extent of that exception is, that the holder of such a security may make a special demand at any reasonable time on the last day of grace; that neglect or refusal to pay on such demand is a dishonor, upon which the holder may give notice to the indorser, or commence suit against the maker or acceptor; and if the holder does not exercise his right, and make such special demand, the maker or acceptor has the whole day in which to make payment. The same doctrine was substantially affirmed by this court in *Pierce* v. *Cate*, 12 Cush. 193. The rule was there stated to be, in regard to notes like the one in question, not payable at or deposited in any bank, that the note is payable at any time on actual demand on the last day of grace; and if on such actual presentment and demand

payment is not made, the maker is in default, and notice of dishonor may be forthwith given to the indorser. But if no presentment or demand is made by the holder or the maker, the latter is not in default till the end. of the business day.

On the subject of interest upon the note not due, on referring to the record, it does not furnish the means of deciding whether any interest was due and payable or not when the action was brought. The provision for interest annually would seem to be for interest payable at the expiration of each year. But the declarations, though they purport to annex copies of the notes, do not state their dates at all in the case of Philander Gordon, and only one of them in the case of George A. Gordon, and that is March 8th 1853. This may be set right in case of another trial.                    *Exceptions sustained.*

At a subsequent trial in the superior court, it appeared that no demand was made on the 4th of April 1855, the last day of grace, on the first note sued on in each case. The plaintiffs' testimony was, that on the first day of April, George A. Gordon, the plaintiff in the second action, asked the defendant Parmelee if he was going to pay those notes, and Parmelee said he should not pay either of them, and George might say so to Philander, the plaintiff in the first action, and the plaintiffs might sue on them as soon as they pleased; that George told Philander on the same day, and they immediately called together on one of the other defendants, and asked him why he would not pay the notes, and he said that Parmelee had forbidden him to do so; and that either two or three days afterwards they left the notes with an attorney to be put in suit.

No objection was taken at the trial to the answer. The plaintiff contended that, upon the evidence, the actions might be brought on the 4th of April without a demand on that day. But *Rockwell,* J. ruled that each action was prematurely commenced, so far as the principal sum on each of the first notes was concerned, and that the evidence as to the transactions on a previous day was incompetent, though the action might be maintained for the interest. Verdicts were returned accordingly

and the plaintiffs alleged exceptions, which were argued by the same counsel at September term 1860.

MERRICK, J. These actions were commenced on the last day of grace to which the maker was entitled on the first note set forth in each declaration. If a suit is prematurely instituted, that is, if the writ is sued out and served before the cause of action accrues, the defendant may take advantage of that objection if the fact becomes apparent upon the trial, although it is not stated in his answer as a ground of defence. In the case of *Staples* v. *Franklin Bank*, 1 Met. 43, it was determined, upon much deliberation and after an elaborate review of numerous authorities bearing upon the question, that the contract of a maker of a promissory note is broken by a neglect or refusal to pay it on demand within reasonable time on the last day of grace, and that the holder may then have his remedy by action against him. In the present cases, therefore, it depended upon the state of the proof upon the trial whether each action could or could not be maintained. If it was shown that a demand of payment had been previously made within reasonable time on the day when the suit was commenced, or that that had taken place between the parties which was equivalent to a demand and refusal, the plaintiff would have been entitled, if no sufficient defence were otherwise interposed, to recover the contents of the note ; but in the absence of such proof it would be apparent that his alleged cause of action had not accrued when the suit was commenced, and consequently that it could not be maintained, because it was prematurely brought. Upon this question there is no just objection to the ruling of the court.

But the maker of a promissory note, who is not liable to have any suit commenced against him on the last day of grace unless a demand of payment has been previously made upon him within reasonable time on that day, may waive the right of demand, and then he will be exposed to the same liability as if a demand had been made. In the case of *Mechanics' Bank* v. *Merchants' Bank*, 6 Met. 23, it is said by the court that undoubtedly parties to negotiable notes may waive demand and notice, and as a modification of that power may agree to qualified modes of

demand and notice. This rule, though usually resorted to and availed of in reference to indorsers, is, in the reason upon which it is established, equally applicable to the maker. The doctrine of waiver is founded, as was said by the court in the case of *Simonds* v. *Parker,* 1 Met. 508, upon a useful and reasonable principle, and is of extensive application. *Gove* v. *Vining,* 7 Met. 212. *Clark* v. *Montague,* 1 Gray, 446. The waiver of demand, when it is otherwise necessary in order to charge parties to promissory notes, in the words of the chief justice in *Gove* v. *Vining,* "tends to put the holder off his guard, and induces him to forego making a demand at the proper time and place; and it would be contrary to good faith to set up such want of demand and notice, caused perhaps by such forbearance, as a ground of defence."

Such waiver by the maker does not entitle the holder to commence his action at any hour on the last day of grace earlier than he could if he had made a legal and sufficient demand of payment; that is, not before the lapse of the reasonable time within which the demand of payment on that day might properly be made; because any agreement which would accelerate the time of legal payment, or, what is the same thing, the liability to an action for nonpayment, would be a change of the contract, which could be effected only in such form and upon such consideration as would be sufficient to constitute a substantive contract. In short, when there has been such waiver by the maker, the rights and liabilities of the parties are just the same as if the demand of payment had been seasonably and properly made in such manner and at such time as would render the maker liable to a suit on the last day of grace.

Applying this principle to the ruling of the court in relation to the evidence which was produced upon the trial by the plaintiffs, it is obvious that it was erroneous. The evidence was competent, and should have been submitted to the jury to determine whether it proved that the defendants waived their right of demand of payment on the last day of grace as a preliminary to the right of the plaintiffs to commence their suits on that day. If such waiver should be proved, the actions may be maintained. *Exceptions sustained.*

Upon another trial in the superior court, the plaintiffs obtained verdicts upon which judgments were rendered. See 2 Allen, 212.